No. 15-1372

In the
**United States Court of Appeals
for the Seventh Circuit**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

CHRISTOPHER R. SEALS,
Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 13-cr-46 — Hon. Theresa L. Springmann, *Judge*.

**BRIEF FOR THE UNITED STATES**

DAVID CAPP
United States Attorney

DAVID E. HOLLAR
Assistant United States Attorney
Chief, Appellate Division

NATHANIEL L. WHALEN
Assistant United States Attorney
United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
(219) 937-5500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES..................................................................2

STATEMENT OF THE CASE ..............................................................3

    I.    Procedural Background...........................................................3

    II.    Offense Conduct ....................................................................5

        A.    Robbery of PNC Bank ...................................................5
        B.    Post-robbery rendezvous with Stephens .......................6
        C.    The high-speed chase ....................................................7
        D.    Seals's interview ............................................................7

    III.    404(b) evidence ......................................................................9

        A.    404(b) motions and evidentiary hearing ......................9
        B.    Court's 404(b) order ....................................................11
        C.    Trial testimony regarding the mask...........................11

    IV.    Sentencing .........................................................................15

SUMMARY OF THE ARGUMENT ......................................................18

ARGUMENT ..................................................................................19

    I.    The Mask Discovery Evidence Does Not Warrant Reversal.
        ..........................................................................................19

        A.    The evidence was relevant under Rules 402 and 404 to
                a contested issue, namely Seals's identity, and was also
                relevant to avoid jury confusion. ..................................20

B. The district court did not abuse its Rule 403 discretion in finding the probative value of the discovery evidence was not substantially outweighed by its minimal prejudicial effect. ........................................................... 26

C. Because the evidence against Seals was overwhelming, and the discovery evidence was a minimal part of the trial, any error was harmless. ..................................... 30

II. Seals waived his arguments against the reckless endangerment enhancement, which the court in any event did not plainly err in imposing. ........................................... 36

A. Seals's objections on appeal are waived. ..................... 37

B. If not waived, Seals has failed to show the court plainly erred in applying the enhancements. .......................... 42

C. If this Court finds plain error, it should remand for full resentencing ................................................................. 46

III. Seals waived his argument that he did not commit "another felony," and the district court in any event did not plainly err in imposing the enhancement. .............................................. 47

A. Seals waived his objection to the "another felony" enhancement. ............................................................... 48

B. The court did not plainly err in applying the (b)(6)(B) enhancement. ............................................................... 49

C. If the Court finds plain error, it should remand for consideration of the government's alternative arguments. ................................................................... 52

CONCLUSION ........................................................................ 53

RULE 32 CERTIFICATION ................................................... 54

# TABLE OF AUTHORITIES

## FEDERAL AND STATE CASES

*Rosemond v. United States*, 134 S. Ct. 1240 (2014)..........................48, 49

*Smith v. Indiana*, 809 N.E.2d 938 (Ind. Ct. App. 2004).............48, 49, 50

*United States v. Allen*, 529 F.3d 390 (7th Cir. 2008).......................42, 49

*United States v. Billups*, 536 F.3d 574 (7th Cir. 2008)..........................40

*United States v. Bland*, 517 F.3d 930 (7th Cir. 2008) ...........................32

*United States v. Byrd*, 689 F.3d 636 (6th Cir. 2012) .......................44, 45

*United States v. Clark*, 535 F.3d 571 (7th Cir. 2008) ......................20, 21

*United States v. Conley*, 131 F.3d 1387 (10th Cir. 1997) ......................45

*United States v. Dent*, 984 F.2d 1453 (7th Cir. 1993)...........................35

*United States v. DeSilva*, 505 F.3d 711 (7th Cir. 2007)........37, 38, 40, 49

*United States v. Gallo-Moreno*, 584 F.3d 751 (7th Cir. 2009) ..........21, 24

*United States v. Gomez*, 763 F.3d 845(7th Cir. 2014).................... passim

*United States v. Gorman*, 613 F.3d 711 (7th Cir. 2010) .........................20

*United States v. Harper*, 466 F.3d 634 (8th Cir. 2006)..........................51

*United States v. James*, 477 Fed. Appx. 412 (8th Cir. 2012).................52

*United States v. Johns*, 732 F.3d 736 (7th 2013)...................................40

*United States v. Johnson*, 694 F.3d 1192 (11th Cir. 2012)....................44

*United States v. Lane*, 267 F.3d 715 (7th Cir. 2001) ..............................31

*United States v. Lard*, 327 F.3d 551 (7th Cir. 2003) ..............................44

*United States v. LePage*, 477 F.3d 485 (7th Cir. 2007)...........................47

*United States v. Luna*, 21 F.3d 874 (9th Cir. 1994)................................45

*United States v. Mack*, 343 F.3d 929 (8th Cir. 2003)..............................51

*United States v. Mackin*, 793 F.3d 703 (7th Cir. 2015) ...........................23

*United States v. McCrimon*, 788 F.3d 75(2d Cir. 2015)...................43, 46

*United States v. Miller*, 688 F.3d 322 (7th Cir. 2012) ............... 30, 34, 35

*United States v. Moore*, 641 F.3d 812 (7th Cir. 2011) ............................36

*United States v. Olano*, 507 U.S. 725 (1993) ..........................................42

*United States v. Prieto*, 549 F.3d 513 (7th Cir. 2008)............................34

*United States v. Ramirez*, 783 F.3d 687 (7th Cir. 2015)................ passim

*United States v. Routon*, 25 F.3d 815 (9th Cir. 1994)............................52

*United States v. Taylor*, 522 F.3d 731 (7th Cir. 2008).....................21, 24

*United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991).............22, 24

*United States v. Vasquez*, 673 F.3d 680 (7th Cir. 2012) .........................43

*United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014)...................27

*United States v. Walton*, 255 F.3d 437 (7th Cir. 2001)................... passim

## STATUTES

18 U.S.C. § 922(g) ...................................................................................... 3

18 U.S.C. § 922(g)(1) ................................................................................ 30

18 U.S.C. § 924(c) ...................................................................................... 3

18 U.S.C. § 2113(a) .................................................................................... 3

18 U.S.C. § 3231 ......................................................................................... 1

18 U.S.C. § 3553(a) .................................................................................. 41

18 U.S.C. § 3742 ......................................................................................... 2

28 U.S.C. § 1291 ......................................................................................... 2

Ind. Code § 35-44.1-3-1 .......................................................................... 17

## RULES AND OTHER AUTHORITIES

Fed. R. Evid. 401 ..................................................................................... 19

Fed. R. Evid. 402 ..................................................................................... 19

Fed. R. Evid. 403 ............................................................................... 20, 27

Fed. R. Evid. 404(a) ................................................................................ 19

Fed. R. Evid. 404(b) ......................................................................... passim

U.S.S.G. § 2K2.1(b)(6)(B) .......................................................... 4, 15, 47, 50

U.S.S.G. § 3C1.2 ............................................................................... passim

Weinstein's Federal Evidence § 404.22(c)(4) ......................................... 21

v

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

―――――――――――――

No. 15-1372

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

CHRISTOPHER R. SEALS,
Defendant-Appellant.

―――――――――――――

On Appeal from the United States District Court
for the Northern District of Indiana

―――――――――――――

BRIEF FOR THE UNITED STATES
―――――――――――――


**JURISDICTIONAL STATEMENT**


Appellant Christopher Seals's jurisdictional statement is not
complete and correct. The district court had jurisdiction under 18
U.S.C. § 3231. A grand jury charged Seals in a three-count indictment
on May 22, 2013. (R. 11).[1] The district court sentenced Seals and

―――――――――――――

[1] Citations to the district court record are designated as "R." followed by the
PDF page number. Citations to the trial transcript (R. 110-113) are

1

entered final judgment on February 23, 2015, and he timely filed his notice of appeal on February 25, 2015. (R. 93, 95; S.A. 40). This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 over this appeal from the final judgment.

## STATEMENT OF ISSUES

1. **Rule 404(b) evidence.** Police responded to a suspicious persons call and searched the woods behind a credit union where employees had seen three masked men. They discovered a black mask with Seals's DNA on it that resembled one used to rob a PNC bank four weeks earlier. Did the district court abuse its discretion during the PNC bank robbery trial by admitting evidence explaining how police discovered the mask? If so, was the error harmless in light of the briefness of the testimony and other overwhelming evidence of guilt?

---

designated as "Tr." followed by the day and page number. For example, a quote on page 100 of the transcript from the second day of trial would be designated as "Tr. 2:100". Citations to the trial exhibits are designated as "Ex." Citations to trial exhibit 49—portions of a recording of the interview Seals conducted with authorities—are designated as "Int." followed by the relevant time range. Seals's brief is designated "Def. Br." and his short appendix as "S.A."

**2. Sentencing enhancements.** The district court enhanced Seals's guideline range for reckless endangerment during a high-speed car chase and for possessing a gun during another felony, namely resisting arrest. (a) Did Seals waive his new arguments on appeal when he previously objected on different grounds and disavowed all other objections multiple times? (b) If not, did the district court plainly err in applying the enhancements, when there was evidence from which one could infer Seals encouraged the chase as a passenger and was emboldened by a gun's presence in the car?

## STATEMENT OF THE CASE

### I.     Procedural Background

This case arises out of the February 14, 2013, robbery of a PNC Bank on Coventry Lane in Fort Wayne, Indiana. (Tr. 175, 177-78, 180, 186, 202). In May 2013, a grand jury charged Seals with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and possessing a firearm while a felon, in violation of 18 U.S.C. § 922(g). (R. 11).

3

Before trial, the government provided notice that it intended to introduce evidence of (1) a black mask containing Seals's DNA found on March 13, 2013, in a wooded area behind a credit union, and (2) items seized after a March 20, 2013, high-speed chase involving a black Infiniti including a black cell phone belonging to Seals. (R. 29, 38). Seals partially objected to the motion. (R. 33). The district court held an evidentiary hearing in November 2013, and took further briefing on the matter. (R. 36, 39, 44, 45). On May 7, 2014, the district court partially overruled the objection. (R. 47).

After a four-day trial in September 2014, the jury convicted on all counts. (R. 67). Before sentencing, the parties disputed whether Seals's advisory guideline range should be increased for reckless endangerment during flight (U.S.S.G. § 3C1.2), and for using a firearm in connection with another felony (U.S.S.G. § 2K2.1(b)(6)(B)). (R. 80). On February 17, 2015, the district court held a hearing on sentencing issues. (R. 87, 101). It issued a written opinion finding both enhancements applied. (R. 88).

On February 23, 2015, the district court sentenced Seals to 272 months' imprisonment. (R. 94). Seals now appeals the court's rulings on the Rule 404(b) issue and the two guideline enhancements.

4

## II.     Offense Conduct

### A.     Robbery of PNC Bank

Around 9:10 a.m. on February 14, 2013, three men entered the Coventry Lane PNC Bank with guns drawn, screaming for people to get down. (Tr. 175, 177-78, 180, 186, 202). Two wore black hooded sweatshirts, and all wore black masks. (Ex. 1).

One robber approached head teller Brittany Schweitzer, pointed a gun at her, and took money from her drawer. (Tr. 1:176, 186, 188). The robbers pointed their guns at the stomach of the seven-month pregnant Schweitzer, got in her face, and yelled for her and others to open the vault. (Tr. 1:196-97, 211-12, 220, 225-26). Schweitzer noticed one robber's mask was a black "polyester-type nylon" "knit sort of thing." (Tr. 1:196 217-18). Though she did not remember eye holes in the mask, a surveillance video refreshed her recollection. (Tr. 1:196, 203; Ex. 1).

The robbers put the money in a "tannish" backpack, handcuffed the manager's hands behind his back, told Schweitzer to sit in the vault, and ran out of the bank. (Tr. 1:192-93, 229). The robbers took another employee's cell phone with a flower case and about $100,000 in

cash with bank straps around it. (Tr. 1:193-94; 2:43). The robbery took just four minutes. (Ex. 1).

Officers called to PNC discovered a loaded .38-caliber handgun by Schweitzer's chair. (Tr. 1:197-98, 230; 2:32-35). At least one of the bullets had DNA that matched Seals's. (Tr. 2:88-96).

## B.     Post-robbery rendezvous with Stephens

At about 8:30-8:50 on the morning of the robbery, Seals's brother, Charles,[2] called Deyante Stephens[3] and said to meet in the parking lot of a grocery store on Coventry Lane. (Tr. 2:145-46, 163). A week earlier, Charles spoke to Stephens about possibly robbing a PNC bank with him. (Tr. 2:141). Seals was present for that conversation. (Tr. 2:143-44).

Sometime after 9:00, Charles drove a black Infiniti into the grocery store parking lot. (Tr. 2:146, 163-64). Seals was sitting in the passenger seat wearing a black hooded sweatshirt. (Tr. 2:147-48). Charles handed Stephens a tan backpack and said to meet up later. (Tr.

---

[2] The government refers to Appellant Christopher Seals as "Seals," and his brother, Charles Seals, as "Charles." Charles pled guilty to a separate bank robbery and was sentenced to 228 months' imprisonment. *See* 1:13-CR-89 (N.D. Ind.). That case is currently on appeal to this Court (No. 15-2327).

[3] Stephens pled guilty to aiding and abetting the PNC robbery. (Tr. 2:138). After Seals's trial, he was sentenced to 37 months' imprisonment. *See* 1:13-CR-48 (N.D. Ind.).

2:147, 149). The backpack contained cash in bank wraps and a cell phone with a flower case. (Tr. 2:150). Charles got the money from Stephens that evening and gave Stephens about $3,500. (Tr. 2:152-53).

## C.     The high-speed chase

Just over a month later, at midnight on March 20, 2013, police engaged in a high-speed chase with a black Infiniti. (Tr. 2:174-75). After the car crashed, the driver and front passenger fled, while a third man, Nadier Armour, remained in the backseat. (Tr. 2:175-76). Officers found in the front a handgun, a black cell phone, a traffic citation issued to Seals, and a copy of Seals's identification card. (Tr. 2:182-83, 190-93). In the back were a black knit hat with two holes cut into it, four boxes of ammunition—including one of .38 caliber—531 $1 bills, and 70 $10 bills. (Tr. 2:186-89, 195, 198-99). In the trunk was a dark hooded sweatshirt. (Tr. 2:193-94).

## D.     Seals's interview

Seals voluntarily came in for an interview at the Fort Wayne FBI office on May 1, 2013. (Ex. 49; Tr. 3:62-63). The interview was audio-

recorded.[4] (Tr. 3:62-63). Seals admitted the black Infiniti and the cellphone found inside were his. (Int. 23:15-45, 32:30-40). He gave agents the PIN to unlock the phone. (Tr. 3:71-72). On the phone was an app downloaded the day before the PNC robbery that purported to listen to police scanners. (Tr. 3:35-37).

One agent showed Seals a crime scene photo of the .38-caliber pistol found at PNC. (Int. 5:40-9:15; Tr. 3:65-66). Seals identified it as the gun left behind and later as a .38-caliber, claiming he had seen the picture on the news. (Tr. 3:66, Int. 5:40-9:15, 11:05-11:50, 14:55). He said the weapon was not his, his DNA would not match anything found at the PNC, and he did not touch guns because he was a felon. (Int. 3:45-4:20, 5:25-40, 6:15-25, 10:55-11, 11:50-12:10, 15:05-10).

The agents told Seals that the crime scene photo had not been released publicly and that his DNA was found at the scene. (Int. 7:05-7:45, 9:50-10:30, 15:10-40; Tr. 3:66-67). While maintaining that he was not part of the PNC heist, Seals admitted he loaded the .38-caliber a few days before the robbery and had discussed robbing a bank with

---

[4] A redacted portion of the interview was admitted as Exhibit 49 and played for the jury. (Tr. 3:64). The unredacted interview (Ex. 55) was submitted to the district court for its use in resolving sentencing issues. (R. 87 at 6).

Charles a few weeks before that. (Int. 14:40-15, 15:10-55, 16:10-25, 28:40-31:30). Seals said his only involvement in the robbery was selling the .38-caliber to Stephens. (Int. 22:40-50). Next, Seals said Charles gave him $200-300 on the day of the robbery, but he denied knowing what Charles had done. (Int. 23:50-24:20). Later, Seals said he knew Charles and Stephens robbed the PNC, but his "involvement was to be quiet and don't say nothing." (Int. 27:10-27:40, 28:10-40.). Throughout the interview, Seals told authorities who he thought committed the robbery, naming eight different individuals in all. (Int. 1:05-2:40, 19:25-20:25, 21:40-22:35, 23:50, 30:50-31:20, 33-33:45).

Seals also confessed to buying five or six stolen guns, keeping them at the house where he and other felons regularly stayed, and selling the gun to Stephens. (Int. 16:05-19:10, 22:40).

## III.    404(b) evidence

### A.    404(b) motions and evidentiary hearing

The government filed a pretrial notice under Federal Rule of Evidence 404(b)(2)(B) that it intended to introduce at trial a mask recovered from behind the Three Rivers Credit Union on March 13, 2013, to show Seals's identity. (R. 29 at 6-7; *see also* R. 38 at 10-12). The

district court then scheduled an evidentiary hearing. (R. 36). Witnesses at the hearing testified that a customer saw two masked men in the snow-covered woods behind the credit union. (R. 39 at 30-34, 55). One had a white mask and light clothing while the other wore a dark hooded sweatshirt and a black mask. (R. 39 at 14, 33-34, 44). An employee saw the men "[a]rmy-style crawling up the snow bank." (R. 39 at 11-12, 55). The customer called the police to report suspicious persons, but the men ran away before authorities arrived. (R. 39 at 33, 36-37, 55). The police searched the woods and found both masks, as well as footprints going both east and westbound. (R. 39 at 56, 66). DNA on the black mask matched Seals's. (Tr. 2:102).

In post-hearing briefing, Seals conceded that he did "not object to the admissibility of that mask" or a "simple description of when and where the mask was found." (R. 44 at 2). In response, the government proposed to admit only the "facts surrounding the police response to the area of the [Credit Union] and the officers' recovery of the relevant mask with Seals's DNA," believing that "consistent with Seals's lack of objection regarding the admissibility of the mask and the simple

description of when and where the mask was found." (R. 45 at 2, 4-5).

Seals did not file a reply.

## B.    Court's 404(b) order

The district court partially granted the government's motion. (R. 47). It found the black mask admissible, but "to reduce the risk of unfair prejudice, the details of the masked individuals' behavior prior to the arrival of the police will not be admitted." (S.A. 10). The court also found admissible "the fact that police responded to the area of the [Credit Union] to investigate suspicious behavior, and recovered a mask with the Defendant's DNA." (S.A. 10). The court concluded that admitting this additional context explaining how police came to possess the mask was "necessary to present a complete picture to the jury and this context is not so prejudicial, when weighed against the probative value, as to warrant its exclusion." (S.A. 11).

## C.    Trial testimony regarding the mask

In opening statement, the government showed the jury the mask and said "out on Bluffton Road, here in Fort Wayne there's a report of some just general suspicious individuals out near the woods with a mask. Police officers respond." (Tr. 1:165-66). Counsel noted that "really

11

the most important thing to our case today" as it related to that incident was that officers "collect[ed] this mask and [it] is submitted at a later point" for testing that found Seals's DNA on it. (Tr. 1:166-67).

The mask was introduced through the testimony of Fort Wayne Police Officer Christine Armstead. (Tr. 2:53). Immediately prior to her testimony, defense counsel objected at sidebar based on "404(b)" and "the arguments [she] made in the briefing …" (Tr. 2:50-52). The government noted that it had informed Officer Armstead of the court's pretrial order and intended to try to lead her away from the "things in your order." (Tr. 2:52).

After brief testimony regarding Officer Armstead's experience and job duties, the government drew her attention to March 13, 2013:

> **Q:** Did there come a time when you were dispatched to a suspicious person's report in the 5000 block of Bluffton Road?
>
> **A:** Yes, that morning.
>
> **Q:** Okay. And is that here in Fort Wayne, Northern District of Indiana?
>
> **A.** Yes.
>
> **Q.** You said that morning. What was the approximate time of your dispatch?
>
> **A.** I believe the call was dispatched at about 9:32.
>
> **Q.** Okay.

12

**A.** I probably arrived around 9:40.

**Q.** Okay. And was that a report of some individuals in the woods wearing masks?

**A.** Yes, low crawling towards the bank in the wood line.

**Q.** Were you assisted by any K-9 officers?

**A.** Yes. When I arrived, I went to the bank to speak with the tellers to get more information.

**Q.** Let me stop you right there. I just want to cover the recovery of the evidence, okay?

**A.** Okay. (Tr. 2:53-54)

Armstead then explained that a K-9 officer found "a black nylon, cotton-style" mask with "holes hand cut into it" about four feet off the road. (Tr. 2:54-57, 2:60). A forensic scientist later testified that swabs from the inner portion of the black mask, cuttings from around the eyehole areas, and a hair woven into the weave of the fabric contained DNA that matched Seals's. (Tr. 2:69, 100, 102). The mask itself was admitted as Exhibit 29. (Tr. 2:58-59, 171-72).

During closing arguments, the government referenced the discovery of the mask once:

> This is how we know who is under the mask. After the bank robbery, there were some circumstances – and the circumstances aren't particularly important – but there were some circumstances where some guys were out milling

around in the woods suspiciously, and that's just how the officers get out there. So officers go out, Christine Armstead is the officer in particular who recovers the black mask that we held up or that I held up and we showed there at the trial. Saw what that thing was. It's the same kind of mask that's later found in the black Infiniti, and it's the same thing you see in the surveillance video. (Tr. 4:35).

Seals argued that the mask was "not in the woods, not buried anywhere, but just a few feet off of the road," and "who's to say how it got there? Who is to say it wasn't thrown out of a vehicle?" (Tr. 4:48). There was "no testimony concerning any footprints in the snow, just that that particular mask was found at that location," and "[w]ho's to say that that is a mask that was worn in the bank?" (Tr. 4:48, 64). The government did not address the mask's discovery in rebuttal. (Tr. 4:68-83).

Seals's primary trial defense was alibi. (*See, e.g.,* Tr. 4:65-66). His friends James Williams and Cequella Whitt testified that Seals was at their house all day February 14. (Tr. 3:116-19, 3:144-47). They both claimed that Charles never came over that day, although Williams had said he did when interviewed by the FBI. (Tr. 3:129-30, 147-48, 158,

14

171-72). Whitt claimed to have no knowledge of Seals or anyone else having guns at the house. (3:155-59).

The jury rejected this defense and convicted Seals on all three counts. (R. 67).

## IV.    Sentencing

The presentence report ("PSR") recommended imposing a two-level enhancement for reckless endangerment during flight based on the March 20, 2013, high-speed car chase (U.S.S.G. § 3C1.2). (R. 83 at 8). Seals objected on the ground that there was insufficient evidence to prove he was in the car. (R. 78 at 1). Alternatively, he argued "it is inappropriate that the enhancement be used twice for a single act which occurred on March 20, 2013." (R. 78 at 1). The government responded that there was evidence—namely Seals's phone, robbery proceeds, and other circumstantial evidence—showing he was in the car during the chase. (R. 87 at 12). Back seat passenger Armour told authorities that Charles was driving the car, but a latent print on the gun found inside matched Seals. (R. 39 at 101, 132).

The PSR declined to add a four-level enhancement for possessing a firearm in connection with another felony (U.S.S.G. § 2k2.1(b)(6)(B)).

15

(R. 80 at 1). The government objected, arguing that multiple uncharged felonies supported the enhancement. (R. 80 at 1; R. 87 at 10-12). The government specifically pointed to the gun's presence in the Infiniti, as well as Seals's statements during his recorded interview that he bought guns for known felons, and that some of his guns were used in connection with "different shootings." (R. 87 at 11-12, 16).

At a hearing on the enhancements, Seals reiterated as his "strongest objection" to the firearm enhancement the lack of evidence that he was in the car. (R. 87 at 14-16). As to the reckless endangerment enhancement, defense counsel likewise argued "there is only circumstantial evidence and weak circumstantial evidence that puts him in the vehicle during that car chase." (R. 87 at 15-16). When the court asked if Seals had anything further to present with regard to the sentencing issues, counsel responded, "I don't believe so, Judge. Thank you." (R. 87 at 17).

The district court applied both enhancements. (R. 88). It found based on the identifying evidence left inside the Infiniti that Seals was the front seat passenger. (S.A. 22-23). It applied the reckless endangerment enhancement and noted that the gun, ammunition, and

robbery evidence gave Seals an "incentive … to flee from police." (S.A. 24). The court found it "of no consequence that the Defendant was the front seat passenger and not the driver, because after the high speed chase and crash, the Defendant and his brother both continued to flee from the scene and the evidence." (S.A. 24).

The court also applied the firearm enhancement. (S.A. 29-31). It found that Seals knew he could not possess a gun, and this knowledge, as well as the presence of the gun, facilitated and had the potential to facilitate another felony offense, namely the Indiana crime of resisting law enforcement. (S.A. 30-31 (citing Ind. Code § 35-44.1-3-1)). The court acknowledged but did not address the government's alternative arguments for the enhancement—the use of Seals's guns at various shootings and his supplying of guns to other felons. (S.A. 29-30).

Before sentencing, the district court once again asked "with regard to the objections that were previously filed in, were there any other objections that should be noted at this point with regard to the report or addenda?" (R. 100 at 4). Defense counsel said "No, ma'am." (R. 100 at 4). Counsel later affirmed "there are no legal or factual issues in dispute as

to the presentence report." (R. 100 at 5). The court ultimately imposed sentence at the minimum of the guideline range. (R. 92 at 17; S.A. 39).

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion in admitting evidence that explained how police discovered the mask with Seals's DNA. The evidence had probative value as it was relevant to identify Seals and to avoid juror confusion. The evidence also had minimal prejudicial effect since the brief, sanitized testimony made no mention of an attempted armed robbery, and the government downplayed it. Any error in admitting the evidence was harmless since the case against Seals was overwhelming. The government presented compelling physical evidence—including DNA at the scene—testimony, and Seals's own incriminating and inconsistent statements that all showed his guilt.

Seals waived his objection to both sentencing enhancements by objecting on alternate grounds below and affirming multiple times that he had no other objections. Alternatively, he forfeited these arguments and the court did not plainly err in imposing either enhancement. There

was sufficient evidence based on Seals's past conduct and his post-chase flight to infer that he encouraged the chase. Moreover, the gun in the car had the potential to facilitate the chase by emboldening Seals.

## ARGUMENT

## I. The Mask Discovery Evidence Does Not Warrant Reversal.

Character evidence of a "crime, wrong, or other act" is generally inadmissible to show that "on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a), (b)(1). However, character evidence does not need to be excluded just because it might raise a propensity inference. *United States v. Gomez,* 763 F.3d 845, 860 (7th Cir. 2014) (en banc).

When Rule 404 is potentially implicated, the proponent of admitting such evidence must first show it is relevant, meaning probative and material. *Gomez*, 763 F.3d at 853 (quoting Fed. R. Evid. 401 and 402). The evidence's relevance must stem from a "chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id*. at 860.

If the proponent can make that showing, the district court should admit the evidence unless its probative value is substantially outweighed by the danger of unfair prejudice. *Gomez*, 763 F.3d at 856-57; Fed. R. Evid. 403. In making this determination, the court should consider the extent to which the non-propensity argument, *e.g.*, identity, is contested. *Id.*

This Court reviews the decision to admit 404(b) evidence for abuse of discretion. *Id.* at 858. Under this highly deferential review, the Court will reverse only when "the record contains no evidence on which the district court rationally could have based its ruling." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010); *United States v. Clark*, 535 F.3d 571, 578 (7th Cir. 2008) (noting Court "will second-guess that judgment only in extreme cases").

### A.   The evidence was relevant under Rules 402 and 404 to a contested issue, namely Seals's identity, and was also relevant to avoid jury confusion.

The district court did not abuse its discretion in admitting the discovery evidence because it was relevant to show Seals's identity and to avoid confusing the jury. Identity is a relevant non-propensity

20

purpose for admitting evidence specifically listed in Rule 404(b)(2). *Gomez*, 763 F.3d at 861; *United States v. Gallo-Moreno*, 584 F.3d 751, 756-57 (7th Cir. 2009) (affirming agent's testimony identifying defendant's voice based on attempted drug sale); *see also* 2-404, Weinstein's Federal Evidence § 404.22(c)(4) (direct evidence of defendant's identity admissible). Avoiding juror confusion is a second permissible non-propensity line of reasoning. *United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008).

It is not entirely clear what part of Officer Armstead's testimony Seals believes violates 404(b). What is clear, however, is that Seals in the district court affirmatively waived any potential objection to the admission of the mask itself. Seals told the district court he did "not object to the admissibility of [the] mask," or a "simple description of when and where the mask was found." (R. 44 at 2; Def. Br. 15, 20); *Clark*, 535 F.3d at 577-78 (finding waiver when attorney "affirmatively and repeatedly agreed to the admissibility of" 404(b) evidence). Moreover, Seals before this Court affirmatively disclaims "rely[ing] on [the] limited part of" Armstead's testimony that the men were "low crawling toward the bank." (Def. Br. 13-14 n.2).

21

What Seals quotes in his brief, and presumably objects to, is less than a page of transcript in which Armstead said there was a "report of some individuals in the woods wearing masks" and she "went to the bank to speak with the tellers to get more information." (Def. Br. 13, quoting Tr. 2:54). In other words, he objects to testimony that police responded to a suspicious persons call, there were men in the woods wearing masks, and police officers talked to bank tellers as part of a search. (Tr. 2:53-54).

This evidence was admissible. The identity of the robbers was the key disputed fact at trial. The government asserted Seals was one; Seals denied the point. This made any evidence tending to establish the robbers' identity of great relevance. *Gomez*, 763 F.3d at 855.

The PNC robbers wore black knit nylon masks with hand cut eyeholes. (Tr. 1:196; Ex. 1). Seals's DNA and hair were found on a black knit nylon mask with hand cut eyeholes. (Tr. 2:69, 100, 102). The circumstances surrounding the discovery of that mask "enabled the jury to evaluate this kernel of information in context." *United States v. Townsend*, 924 F.2d 1385, 1415 (7th Cir. 1991). The fact that the police responded to a suspicious person's call explains why they were

22

searching the woods. That masked men were involved explains why the police picked up what, on a snowy day, might have been an otherwise innocuous item. The fact that the police—rather than a layperson—picked it up during the course of an investigation and properly sealed it demonstrates a proper chain of custody. *Cf. United States v. Mackin*, 793 F.3d 703, 708-09 (7th Cir. 2015) (noting improper chain of custody could present valid defense).

Perhaps Officer Armstead should have avoided saying that she "went to the bank" upon her arrival at the scene. (Tr. 2:54). But government counsel immediately interrupted and steered her toward the mask's discovery. (Tr. 2:54). Outside of this brief reference, government counsel and Officer Armstead referred only to street addresses and descriptors like roads and parks. (*See, e.g.,* Tr. 2:56, 59). Indeed, while Seals frames his argument as attacking the introduction of "improper evidence of the credit union incident," the words "Three Rivers Credit Union" or even "credit union" were never uttered before the jury. (Def. Br. 13).

Moreover, divorcing relevant information like the discovery of the mask from its context "would have significantly diminished its force,

which would then have rested solely on the credibility of the government witness." *Townsend*, 924 F.2d at 1415. In *Townsend*, a defendant's beeper number was relevant to identify his role in the conspiracy, and the government sought to prove the number was his by showing he had responded when an undercover informant paged the number during controlled drug buys. *Id.* The defendant argued that the witness should only be able to testify generically that he knew the defendant's phone number based on prior dealings. *Id.* This Court affirmed because the government is not required "to present its evidence in a vacuum; it was entitled to explain the context to the jury." *Id.*; *see also Gallo-Moreno*, 584 F.3d at 756-57.

In addition to establishing identity, the circumstances surrounding the mask's discovery helped avoid jury confusion. *Taylor*, 522 F.3d at 736. Had the district court not admitted the discovery evidence, "the jurors might be scratching their heads and might even think that the police had been violating defendant['s] rights … and maybe should be punished by an acquittal." *Taylor*, 522 F.3d at 736. Without explaining why the police chose to seize the mask and then test it for DNA, the jurors might have been hostile towards authorities and

24

concerned about their liberty if they believed the police were testing random items for DNA. The fact that the police were investigating a report of suspicious masked men avoided that confusion and further established the relevance of Officer Armstead's testimony.

Seals faults the district court for not applying *Gomez* or sufficiently explaining the relevance of Officer Armstead's testimony. (Def. Br. 14-16). It is hard to fault the district court for failing to discuss *Gomez* when its written order issued nine months before that decision. And it is unsurprising that the district court did not go into great detail regarding non-propensity uses of the evidence. Seals conceded that some details regarding when and where the mask was discovered were admissible, and failed to object to the government's suggestion that "facts surrounding the police response to the area of the [Credit Union] and the officers' recovery of the relevant mask with Seals's DNA," was consistent with that concession. (R. 44 at 2; R. 45 at 4-5). In any event, for the reasons explained above, the district court's conclusion that the surrounding facts had at least some probative value was correct and certainly not an abuse of discretion.

**B.     The district court did not abuse its Rule 403 discretion in finding the probative value of the discovery evidence was not substantially outweighed by its minimal prejudicial effect.**

Contrary to Seals's claims, Federal Rule of Evidence 403 did not require exclusion of Officer Armstead's disputed testimony. (Def. Br. 17). The district court carefully weighed the probative and prejudicial value of the mask discovery evidence. It specifically excluded testimony of the "masked individuals' behavior" "to reduce the risk of unfair prejudice." (S.A. 10). It accepted Seals' concession that the mask was admissible, noting the "probative value of the evidence is very high." (S.A. 10). Finally, it found that "[s]ome context explaining how police came into possession of [the mask] is necessary to present a complete picture to the jury and this context is not so prejudicial, when weighed against the probative value, as to warrant its exclusion." (S.A. 11).

The court did not abuse its discretion in finding the prejudicial effect of the mask discovery evidence did not substantially outweigh the probative value. *Gomez*, 763 F.3d at 860.[5] Although a small part of the

---

[5] Seals properly states the Rule 403 test on page 15, but flips the balancing later when he argues "the probative value [of the evidence] did not 'substantially outweigh' its prejudicial effect." (Def. Br. 17). The correct

government's case, the discovery evidence was highly probative because it went to a contested issue, Seals's identity. *Gomez*, 763 F.3d at 857-60.

Moreover, the evidence of the circumstances surrounding the mask's discovery was not unduly prejudicial because that evidence did not link Seals to any crimes, the government downplayed the surrounding circumstances, and defense counsel's own actions show how vague and innocuous the testimony was.

First, none of the evidence was offered to "link [Seals] to a different bank robbery" or to prove that Seals "robs banks; therefore he robbed the PNC." (Def. Br. 16, 17). Indeed, the jury heard no evidence that anyone robbed the credit union, attempted to rob it, or that police or employees even considered it an attempted robbery. *See, e.g., United States v. Volpendesto*, 746 F.3d 273, 293 (7th Cir. 2014) ("government never elicited testimony that Sarno actually *was* a bad person, or violent, or a member of the mafia").

Nor did the government make a propensity argument. The government did tell the jury that it could infer that the mask Officer

---

inquiry is whether the prejudicial value substantially outweighs the probative value. Fed. R. Evid. 403.

Armstead found was a "bank robbery mask," but this was not, as Seals claims, a propensity argument. (Def. Br. 16-17). The government was not arguing that Seals used the mask to rob the Credit Union. Rather, the government argued that, because the black knit nylon mask contained Seals's hair and DNA and looked the same as the black knit nylon mask used at PNC, they could infer it was the "bank robbery mask" worn by Seals when he robbed PNC. (R. 38 at 10-11; Tr. 4:40, 82).

Even if the admitted testimony had some prejudicial effect, the district court was within its discretion in finding that prejudice was not so great as to outweigh the probative value. The contested evidence constituted less than twenty lines of transcript during a four-day trial and the government downplayed the evidence. The government attempted to lead Armstead away from any improper testimony by going over the court's order ahead of time with her and asking leading questions. (Tr. 2:54). When Officer Armstead ventured close to improper testimony, the government quickly steered her away. (Tr. 2:54).

In its opening statement, the government referenced "some just general suspicious individuals" but never mentioned that the incident

28

occurred at a bank or credit union, and noted "really the most important thing to our case today" is that the DNA matched Seals's. (Tr. 1:166). In closing arguments, the government argued the discovery "circumstances aren't particularly important" since they only went to establishing "how the officers get out there" and found the mask. (Tr. 4:35). The government characterized the incidents as individuals "milling around in the woods suspiciously." (Tr. 4:35).

Finally, defense counsel's actions show the lack of prejudice. Counsel asserted only a standing objection based on her pretrial motions, and never specifically objected to the few questions and answers Seals now deems problematic. (Tr. 1:51-52). Indeed, Seals argued based on the limited testimony presented that there was no evidence as to how or when the mask got in the woods, whether it was used in the PNC, or if Seals was the last person to wear it. (Tr. 4:48-51, 64). Under these circumstances, any minimal prejudice presented does not substantially outweigh the relevance and probative value of the mask's discovery.

**C.    Because the evidence against Seals was overwhelming, and the discovery evidence was a minimal part of the trial, any error was harmless.**

If this Court finds admission of any of Officer Armstead's testimony was in error, it asks whether "in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Miller*, 688 F.3d 322, 329 (7th Cir. 2012) (internal quotation omitted); *Gomez*, 763 F.3d at 863. This includes considering: (1) whether the other evidence of guilt is overwhelming; (2) whether the evidence "posed a serious threat to excite the emotions of the jury to the point of irrational behavior"; and (3) any curative jury instructions. *Miller*, 688 F.3d at 329-30.

As an initial matter, Seals does not argue—and no compelling argument can be made—that any error affected the felon-in-possession conviction. Seals, a felon, admitted to loading the gun used to rob PNC. (Int. 16:10-25). His DNA was on one of the bullets. (Tr. 2:96). He also admitted to setting up a deal to buy, and then buying, five or six other guns. (Int. 15:30-17:30). It is sufficient under 18 U.S.C. § 922(g)(1) that a felon held a gun, and Seals's own statement is overwhelming on that

point. *United States v. Lane*, 267 F.3d 715, 718-19 (7th Cir. 2001). The Court should not vacate the felon-in-possession conviction.

### 1. The evidence was overwhelming that Seals robbed the bank.

As it relates to the other two counts, the evidence against Seals was similarly overwhelming. Physical and testimonial evidence, including Seals's own admissions and contradictory and changing stories, all proved his guilt. The government's case would not have been significantly less persuasive had the court excluded the few lines of testimony regarding the mask's discovery. *Gomez*, 763 F.3d at 863.

First, abundant physical evidence linked Seals to the crime. Seals's DNA was on bullets left at the PNC and on a mask that strongly resembled those used during the robbery. (Tr. 2:96, 102). Moreover, Seals's phone contained an app to listen to police scanners downloaded the day before the robbery. (Tr. 3:35-37). Even in closing arguments, Seals offered no innocent explanation for downloading such an app. Finally, Seals admitted the Infiniti was his car, and officers found inside it a second black mask with eyeholes, a large stack of bills, a

31

dark hooded sweatshirt, and .38-caliber ammunition compatible with the gun left behind at PNC. (Int. 32:30-40; Tr. 2:186-89, 193-95, 198-99).

Testimonial evidence further linked Seals to the crime. Stephens placed Seals in the Infiniti's passenger seat immediately after the robbery, in a nearby physical location. (Tr. 2:147-48). Moreover, Stephens saw Seals in a dark hooded sweatshirt, just like the robbers wore. (Tr. 2:147-48).

Seals's own interview further incriminated him. He recognized the gun left behind at the PNC, even by caliber, claiming to have seen it on the news. (Int. 5:40-9:15, 11:05-11:50). But authorities did not release that crime scene photo, and Seals' own witness Whitt laughed when asked if he paid attention to the news. (Tr. 3:65-66, 157; Int. 7:05-45, 9:50-10:30). In addition, Seals admitted to discussing a robbery with Charles shortly before February 14. (Int. 28:40-31:30).

Beyond this, Seals constantly changed his story during the interview. *See, e.g., United States v. Bland*, 517 F.3d 930, 934-35 (7th Cir. 2008) (noting defendant's changing story went to showing overwhelming evidence of guilt). He first said unequivocally that authorities would not find his DNA at the scene and he never touched

guns. (Int. 3:40-4:20, 5:25-40, 10:55-11, 11:50-12:10, 15:10). When confronted with contradictory evidence, his story progressed through various iterations to an eventual admission that he not only touched guns, but he also bought and sold them—and in fact loaded the gun used in the PNC robbery. (Int. 15:30-19:10). It requires little to find equally false Seals' assertion that he did not rob PNC.

Seals spends little time discussing this evidence. He points to his alibi witnesses, but they did little to help his case. (Def. Br. 20). Seals's own attorney admitted Williams "wasn't the greatest witness," and "[h]e didn't help us very much," and he could not account for Seals's whereabouts at the time of the robbery. (Tr. 4:54, 62, 66). Whitt testified Seals was sleeping on the couch and awakened around the time of the robbery, but her testimony conflicted with much of Seals's interview. For example, she denied that Charles came over the day of the robbery, and said she never saw guns in the house during the relevant period. (Tr. 155-159). These statements flatly contradicted facts Seals told authorities. The jury rejected her purported alibi testimony and there is no reason to think it would have viewed the

33

evidence differently had it not known the circumstances of the mask's discovery.

Essentially, Seals asks this Court to find that the government's case would have been significantly weaker based on a few lines that masked men were acting suspiciously behind the credit union. But none of that testimony affected the DNA inside the gun, the other physical evidence, Stephens's testimony, Seals's own self-incriminating statements, and his contradictory stories. For these reasons, any error was harmless.

### 2. The way the evidence was used shows no harmful error.

Nor did the contested evidence pose any threat to excite or inflame the jury. *Miller*, 688 F.3d at 329. First, the "fleeting" challenged testimony constitutes roughly one page of transcript over the course of a four-day trial. *Id.* at 330-31; *see also United States v. Prieto*, 549 F.3d 513, 523 (7th Cir. 2008) (finding no prejudice where testimony was "brief"). Second, the government presented the evidence in a sanitized, unemotional way; it downplayed the circumstances of the mask's discovery and did not use extrinsic evidence to try to prove up the

34

attempted robbery. *Miller*, 688 F.3d at 330 (noting proof by extrinsic evidence is a consideration).

Conversely, defense counsel took advantage of the court's limited ruling. Counsel argued there was no testimony concerning footprints by the snow, even though evidence during the 404(b) hearing showed footprints led in two directions from the scene. (Tr. 4:48; R. 49 at 65-66); *see also United States v. Dent*, 984 F.2d 1453, 1461-62 (7th Cir. 1993) (rejecting 404(b) argument because, among other things, defense questioned during closing argument "the existence of the items not presented at trial" and used the ruling to its advantage). Consequently, Seals has presented no plausible way this evidence would have inflamed the jurors.

### 3. The court offered to give a curative instruction in other context, but counsel did not request one.

Finally, no limiting instruction was given regarding the testimony. It is hard to hold this in Seals's favor, though. The government proposed a generic Rule 404(b) instruction prior to trial (R. 55, proposed instruction 15), and the district court said it would consider any limiting instructions Seals requested. (Tr. 3:94, 182-83).

Though not definitive, counsel's decision not to ask for an instruction, either after the relevant testimony or in closing argument "undermines [Seals's] current argument that any comment or reference" to the 404(b) evidence was prejudicial error. *United States v. Moore*, 641 F.3d 812, 821 (7th Cir. 2011).

Based on all of those factors, the district court did not abuse its discretion in admitting the evidence. Certainly, any error was harmless.

## II.     Seals waived his arguments against the reckless endangerment enhancement, which the court in any event did not plainly err in imposing.

A defendant's guideline range is to be increased by two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Application Note 5 states: "the defendant is accountable for the defendant's own conduct and for the conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." The court applied this enhancement based on Seals's role in the March 20 high-speed chase.

36

## A.    Seals's objections on appeal are waived.

Seals argued in the district court that the reckless endangerment enhancement did not apply because he was not a passenger during the high-speed chase. (R. 80 at 2; 87 at 15-16). He now asserts that the enhancement cannot apply to a passenger without further factual findings that the district court did not make. (Def. Br. 24-26). Because Seals never made this argument below, and stated to the court multiple times that he did not have any other objections, the objection is waived.

Waiver occurs when a defendant "intentionally relinquishes or abandons a known right." *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001) (internal quotation omitted). Waiver is the manifestation of an intentional choice not to assert a right, as compared to forfeiture, when the failure to raise an argument is accidental or neglectful. *Id.* While forfeiture is reviewed for plain error, waived issues cannot be reviewed. *Id.*

More specifically, when a defendant makes a specific objection to a sentencing enhancement and then states he has no other objections, the defendant has "expressly disavow[ed] any other objections" and waived any new arguments on appeal. *Id.* at 441-42; *United States v. DeSilva*,

37

505 F.3d 711, 717 (7th Cir. 2007). "A party may not by his own actions lull the court into believing that an express finding is unnecessary and then object when it makes no such finding." *Walton*, 225 F.3d at 442; *DeSilva*, 505 F.3d at 717 (quoting *Walton*). That is exactly what happened in this case.

Seals objected to the obstruction enhancement because there was insufficient evidence that he was in the car or, in the alternative, that the chase should not be the basis of two enhancements. (R. 80 at 2; R. 87 at 15-16). During the hearing, Seals argued there was insufficient evidence that he was in the car and then said, "I think that's all I have, Judge." (R. 87 at 15). The court explicitly asked if there was "anything else" in relation to the "objection to reckless endangerment during flight." (R. 87 at 15). Counsel responded that "I think my same argument is that there is only circumstantial evidence and weak circumstantial evidence that puts him" in the car. (R. 87 at 15-16). In other words, counsel reiterated that there was only one objection at play. Just to confirm, at the end of the hearing the court asked: "[I]s there anything further that either side wanted to present to the Court with regard to the sentencing issues that we have discussed at the

38

conference or anything else?" (R. 87 at 17). And, again, counsel said no. (R. 87 at 17).

Had Seals not disavowed any other objection by this point, he certainly did after the court issued its opinion overruling his objection. In the ruling, the court noted "[i]t is of no consequence that [Seals] was the front seat passenger and not the driver, because after the high speed chase and crash, the Defendant and his brother continued to flee from the scene and the evidence." (S.A. 8). This is the exact issue that Seals now objects to: he argues that because he was a passenger, he cannot be held liable unless the district court makes a specific factual finding that he caused or brought about the driver's conduct.

Yet four days later at sentencing, the court gave counsel another chance to raise any arguments, saying "with regard to the objections that were previously filed in, were there any other objections that should be noted at this point," and counsel again said no. (R. 100 at 4; *see also id.* at 5 (confirming "no remaining legal or factual issues in dispute")). The issue was on counsel's mind. Counsel argued Seals's presence in the car "doesn't mean that [he] has any control over what Charles is doing as far as that high-speed chase was concerned" as a

reason for a 272-month sentence (which the court imposed). (R. 100 at 17-18). But she made no objections to the guideline range itself.

Counsel was given four chances to make alternative arguments, and stood by the original objection at each turn. Seals is thus objecting that the district court did not make an express factual finding only after "lull[ing] the [district] court into believing that an express finding … [was] unnecessary." *Walton*, 225 F.3d at 442; *DeSilva*, 505 F.3d at 717 (quoting *Walton*). That is waiver.

Seals's affirmative statements that he had no other objections distinguishes this case from *United States v. Johns*, 732 F.3d 736, 740 (7th 2013), and *United States v. Billups*, 536 F.3d 574, 577-78 (7th Cir. 2008), which Seals relies upon to argue that he only forfeited the issue. In neither case did the Court consider an affirmative waiver of all other objections. Moreover, both of those cases involve new arguments that the court made improper legal, rather than factual, determinations. *See Johns*, 732 F.3d at 740 (holding court erred in double counting enhancements based on same conduct); *Billups*, 536 F.3d at 576-77 (noting it was deciding "legal inquiry … not a factual inquiry"). Conversely in this case, like *Walton* and *DeSilva*, the defendant "lull[ed]

40

the court into believing" no further factual findings were necessary, yet now complains those findings were not made.

A waiver finding is further supported by the tactical and strategic reasons for Seals to make the objection he did. *Walton*, 255 F.3d at 442 ("we will not 'override the clearly expressed wish of a party or his lawyer, which may be backed by excellent strategic reasons, not to invoke a particular right'" (citation omitted)). It would have been inconsistent for Seals to argue that he was not in the car at all, but alternatively argue that any acts he took in the car were not in furtherance of the car chase. Furthermore, counsel might have been concerned that attacking the enhancement on this ground might have caused the government to seek out and introduce evidence of Seals's specific role in the high-speed chase and other related activities. This could have negatively affected Seals's sentence when the court considered the 18 U.S.C. § 3553(a) factors. That actually played out during counsel's sentencing argument when she noted that the court should not hold Seals responsible for the chase because he was just doing what his brother said. (R. 100 at 18). For all these reasons, Seals's new argument is waived.

41

**B.    If not waived, Seals has failed to show the court plainly erred in applying the enhancements.**

If not waived, Seals has forfeited his argument because he did not make the objection he now makes, and thereby deprived the district court of a chance to make the factual finding he now seeks. *See United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008). As a result, Seals must show the district court committed plain error, meaning it: (1) erred; (2) the error was plain; and (3) the error prejudiced him. *United States v. Olano*, 507 U.S. 725, 733-34 (1993).

On appeal, Seals does not contest that he was in the black Infiniti as it engaged in a high-speed chase that recklessly endangered the lives of individuals when it fled the police. Nor does he challenge that he fled by foot after the crash. His current claim is that he did not counsel or otherwise facilitate the chase.

The Sentencing Guidelines instruct that for purposes of the reckless endangerment guideline a defendant is responsible for his "own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2 n.5. Courts have uniformly concluded that in the context of a car chase

"some form of direct or active participation which is consistent with Note 5 is necessary for" the enhancement to apply to a passenger. *United States v. McCrimon*, 788 F.3d 75, 79 (2d Cir. 2015) (per curiam) (collecting cases). The district court made no such finding here.

However, the court's failure to make this finding does not rise to the level of plain error. This Court has never weighed in on what evidence is sufficient for the enhancement to apply to a passenger, other courts have applied it based on post-chase flight, and there was sufficient evidence to infer that Seals actively encouraged the flight.

An error is plain if "it is so obvious that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it … It cannot be subtle, arcane, debatable, or factually complicated." *United States v. Ramirez*, 783 F.3d 687, 694 (7th Cir. 2015) (internal quotations omitted). If there is sufficient evidence to support the enhancement, the court did not plainly err in applying it. *United States v. Vasquez*, 673 F.3d 680, 685-688 (7th Cir. 2012) (affirming sentencing enhancements where evidence supported them).

This Court has not weighed in on what evidence and findings are sufficient to support the enhancement. Seals's authority on this point all lies outside this circuit. (Def. Br. 24-26). He does cite one case where this Court found that flight by foot standing alone is not enough to support the enhancement. *United States v. Lard*, 327 F.3d 551 (7th Cir. 2003) (per curiam). That case, however, did not address any car chase. The government, too, has not located any precedential Seventh Circuit decisions addressing the enhancement's application to a passenger. In other words, this is an issue of first impression in this Circuit. This Court "rarely find[s] plain error on a matter of first impression" since they are "unlikely to be that obvious" even when "other circuits … have addressed this issue." *Ramirez*, 783 F.3d at 694-95.

In any event, the district court did not plainly err in relying on Seals's pre-chase motivation and subsequent flight on foot as evidence supporting the enhancement. (S.A. 8). Other courts have held that post-chase flight on foot can be relevant in some circumstances. *See, e.g., United States v. Johnson*, 694 F.3d 1192, 1197-98 (11th Cir. 2012) (rejecting argument, but collecting cases that adopted argument); *United States v. Byrd*, 689 F.3d 636, 642 (6th Cir. 2012) (finding

44

evidence, including that defendant fled, "show Byrd's desired to evade capture, from which one could infer" active participation in flight); *United States v. Luna*, 21 F.3d 874, 885 (9th Cir. 1994) (applying enhancement when defendant fled on foot and left behind moving car); *United States v. Matthews*, No. 01-cr-3832, 2001 U.S. Dist. LEXIS 13921, at **6-7 (N.D. Ill. Sept. 4, 2001) (unpublished) (affirming enhancement when, among other things, defendant ran away). At the least, it is debatable whether the district court must make a finding of more than pre-chase motivation and post-chase flight, and a debatable issue is not plainly erroneous. *Ramirez*, 783 F.3d at 694.

Moreover, other evidence in the record supports the enhancement. Since there will rarely be evidence about a passenger's affirmative facilitation of the high-speed chase, courts can infer responsibility based on "conduct occurring before, during, or after a high-speed chase." *Byrd*, 689 F.3d at 640 (quoting *United States v. Conley*, 131 F.3d 1387, 1390 (10th Cir. 1997)). Here, the court found Seals had an "incentive" to flee before the chase began, namely the gun in the car with his fingerprint, ammunition, robbery tools and cash. (S.A. 24). It is reasonable to find that Seals would not sit idly by as the police pulled him over in the

45

middle of the night with all this evidence, and that he therefore encouraged the flight.

Seals relies on *McCrimon* to argue the failure to make findings of an affirmative act is plainly erroneous. (Def. Br. 25, citing *McCrimon*, 788 F.3d at 77). But that case is distinguishable because the parties squarely put in front of the district court the issue of whether the passenger encouraged the chase; in other words, the prosecutor was not "derelict in countenancing" the error. *Ramirez*, 783 F.3d at 694. Conversely here, neither the prosecutor, defense, nor judge raised this factually complicated issue of first impression in this Circuit. Seals cannot show any error was plain.

### C.   If this Court finds plain error, it should remand for full resentencing.

If this Court finds plain error, the error prejudiced Seals because it affected his sentence. (R. 92 at 8). In that case, this Court should remand for a full resentencing. Because Seals did not raise this matter in the district court, the government had no notice that it needed to present evidence regarding Seals's specific role and activities in the chase. A full resentencing will allow both parties to present any

additional evidence on the point before the district court makes factual findings on the point.

### III.     Seals waived his argument that he did not commit "another felony," and the district court in any event did not plainly err in imposing the enhancement.

A defendant's sentence can be enhanced if he "used or possessed any firearm or ammunition in connection with another felony offense," including a state felony. U.S.S.G. § 2K2.1(b)(6)(B) & n. 14(C). A gun is used "in connection" with another offense when it "facilitated, or had the potential of facilitating" that offense. U.S.S.G. § 2K2.1(b)(6)(B) n. 14(A). Relevant to this appeal, a gun has the potential to facilitate a felony when it "embolden[s]" the actor. *United States v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007).

Though the government offered multiple grounds for this enhancement, the court applied it based solely on the high-speed chase. (S.A. 29-31). Indiana Code §§ 35-44.1-3-1(a)(3) and 1(b)(1)(A) make it a felony to use a vehicle to "knowingly or intentionally … flee[] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's sirens or emergency

47

lights, identified himself or herself and ordered that person to stop." A passenger violates the Indiana statute if he or she acted in concert with the driver or "aid[ed] another to commit" the offense. *Smith v. Indiana*, 809 N.E.2d 938, 944-45 (Ind. Ct. App. 2004). This means if the passenger "help[ed] another to complete its commission" by giving "'assistance or encouragement … with the intent thereby to promote or facilitate commission of the crime.'" *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014) (quoting 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)). A court should consider, among other things, a defendant's conduct before, during, and after the occurrence of the crime. *Smith*, 809 N.E.2d at 944.

### A.    Seals waived his objection to the "another felony" enhancement.

As with the reckless endangerment enhancement, Seals waived his new objection that he did not commit a felony under Indiana law. (Def. Br. 27-28). In front of the district court, Seals objected to the felony offense solely on the ground that there was insufficient evidence to find he was in the car. (R. 87 at 14-15). Counsel called this her "strongest objection." (R. 87 at 14). Just as with the other enhancement,

48

counsel had multiple opportunities to raise any other objections, but expressly disavowed all other objections. (R. 87 at 17; R. 100 at 4, 5). And just as with the other enhancement, there was a potential strategic reason for doing so: counsel may not have wanted Seals implicated with the chase and all the negatives surrounding it. The best way to avoid tying Seals to those facts—which might have negatively affected him when the court weighed the § 3553(a) factors—was to argue Seals was not actually in the car. The argument is therefore waived. *Walton*, 225 F.3d at 442; *DeSilva*, 505 F.3d at 717.

## B. The court did not plainly err in applying the (b)(6)(B) enhancement.

If Seals did not waive his new argument, he at least forfeited it, making review for plain error. *Allen*, 529 F.3d at 395. Seals is correct that the court made no finding that Seals took an affirmative act to facilitate the chase. That was error when Seals's liability under Indiana law required that he assisted or encouraged the chase. *Rosemond*, 134 S. Ct. at 1245 (noting accomplice liability requires affirmative act under common law); *Smith*, 809 N.E.2d at 944 ("mere presence at the crime

scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability").

Despite this, the district court did not plainly err in applying the "in connection with another felony" enhancement. The court could have inferred that he committed "another felony" by encouraging the flight. Just as with U.S.S.G. § 3C1.2, the Indiana statute applies if a passenger aided or abetted, assisted, or encouraged the driver in escaping in a reckless manner. *Smith*, 809 N.E.2d at 944-45. Just as with U.S.S.G. § 3C1.2, the court should consider the passenger's acts before, during, and after the chase to determine if he aided or abetted the escape. *Id.* Seals does not contest on appeal that the individuals inside the car resisted arrest as defined by the statute; instead, he argues that he should not be held responsible as the passenger. (Def. Br. 27-28). But like with U.S.S.G. § 3C1.2 as discussed above, it is reasonable to infer based on his pre-chase actions, his "incentive" to flee, and subsequent flight on foot that Seals would not sit idly by as the police tried to pull him over and that he encouraged the flight.

Nor did the court plainly err in finding that the gun facilitated or had the potential to facilitate the chase. U.S.S.G. § § 2K2.1(b)(6)(B) n.

50

14(A). The court found the pistol with Seals's "latent fingerprint" on it "would encourage the Defendant to flee"; in other words, the "presence of the gun and the ammunition in the vehicle facilitated, or had the potential of facilitating" the chase. (S.A. 30). As the court intimated, a reasonable person could infer that the gun emboldened Seals to engage in the high-speed chase. The car Seals said was his had been involved in "numerous incidents with shots fired," including a "shooting incident" and "vehicle incident" the day before the high-speed chase. (R. 39 at 89; R. 45-2 at 2). From this, all the evidence linking Seals to the car, and his role in the armed PNC robbery itself, the court could have inferred that Seals was not afraid to use a gun and its presence encouraged him to take the risk of fleeing.

Similarly, Seals's fingerprint was on the gun and the court could have found that possession emboldened him to participate in the chase. Other courts have found a defendant is emboldened by possessing a gun during other car-related crimes, even when they are not holding the firearm. *United States v. Harper*, 466 F.3d 634, 650-51 (8th Cir. 2006) (applying enhancement when defendant operated stolen vehicle with fully loaded gun in driver's seat and other firearms elsewhere); *United*

*States v. Mack*, 343 F.3d 929, 936 (8th Cir. 2003) (applying enhancement when defendant had gun in an "easily accessible location while in a stolen car"); *United States v. Routon*, 25 F.3d 815, 819 (9th Cir. 1994) (holding "efforts to maintain accessibility of [defendant's] gun whenever he used his car permit the inference that the gun emboldened him"); *see also United States v. James*, 477 Fed. Appx. 412, 413-14 (8th Cir. 2012) (unpublished) (applying enhancement when defendant engaged in high-speed chase and "possessed and took [a gun] with him as he exited the car and ran from the police"). Though authorities found the gun on the driver's side, Seals's fingerprint was on it and the court could have inferred that he had recently held the gun and such possession emboldened him. At the least, the complicated factual question of whether the gun facilitated the resisting arrest felony and its imposition is not plain error. *Ramirez*, 783 F.3d at 694.

**C.    If the Court finds plain error, it should remand for consideration of the government's alternative arguments.**

The enhancement affected Seals's sentence. (R. 92 at 9). If the Court finds plain error, it should remand for reconsideration. The

district court never addressed the government's alternate bases for applying the enhancement, and should have an opportunity to do so. Moreover, as with the reckless endangerment issue, additional facts could shed further light on Seals's exact role in aiding and abetting the Infiniti's flight.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court. In the alternative, the Court should remand for further findings.

Respectfully submitted,

DAVID CAPP
United States Attorney

DAVID E. HOLLAR
Assistant United States Attorney
Chief, Appellate Division

By:   */s/ Nathaniel L. Whalen*
Nathaniel L. Whalen
Assistant United States Attorney
United States Attorney's Office
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
(219) 937-5500

53

## RULE 32 CERTIFICATION

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 10,447 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word word processing program, with fourteen point Century Schoolbook font.

*/s/ Nathaniel L. Whalen*
Nathaniel L. Whalen
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lorene B. Nelson
Lorene B. Nelson
Legal Assistant