In the

# United States Court of Appeals

## For the Seventh Circuit

———————————————

No. 15-1372

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER R. SEALS,

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 13-cr-46 — **Hon. Theresa L. Springmann**, *Judge.*

———————————————

ARGUED DECEMBER 9, 2015—DECIDED FEBRUARY 23, 2016

———————————————

Before EASTERBROOK and HAMILTON, *Circuit Judges,* and
PALLMEYER, *District Judge.*[*]

PALLMEYER, *District Judge.* Three armed men robbed a
bank in Fort Wayne, Indiana on Valentine's Day 2013. A jury
determined that Christopher Seals was one of those men,
convicting him in September 2014 of armed bank robbery,

—————————

[*] The Honorable Rebecca R. Pallmeyer, United States District Court
for the Northern District of Illinois, sitting by designation.

brandishing a firearm during a crime of violence, and possession of a firearm after a felony conviction. The district court sentenced Seals to 272 months in prison. On appeal, Seals argues that his conviction should be reversed because the government introduced improper propensity evidence. He also argues that his sentence should be vacated due to the district court's allegedly erroneous application of two different sentencing enhancements. We affirm Seals' conviction, but vacate his sentence, and remand for resentencing.

**I**

At approximately 9:10 a.m. on February 14, 2013, three masked men walked into a PNC Bank in Fort Wayne, Indiana. They pointed their guns at bank employees, including a teller, Brittany Schweitzer; handcuffed the manager; and left the bank with approximately $100,000 and a bank employee's cell phone in a floral case, which they placed in a "tannish" backpack. The entire episode took roughly four minutes. No one caught a glimpse of the getaway vehicle.

When officers arrived on the scene, they discovered a loaded handgun that the robbers had left behind. Subsequent forensic analysis found Seals' DNA on the ammunition inside the gun. The gun itself yielded no identifiable DNA.

That same morning, before the bank robbery took place, Deyante Stephens received a call from Charles Seals[1], Defendant's brother, asking Stephens to meet Charles in the parking lot of a grocery store down the street from the PNC

---

[1] To avoid confusion, we refer to the Appellant as "Seals" or "Defendant," while we will refer to his brother exclusively as "Charles."

Bank. Stephens arrived in the parking lot just after 9:00 a.m. and Charles appeared shortly thereafter, driving a black Infiniti. Seals was seated in the passenger seat of the Infiniti, and a third man, unknown to Stephens, sat in the back. Charles got into Stephens' car and gave Stephens a tan bag containing cash and a cell phone in a floral case, and the men parted ways. Stephens and Charles met again that night at Stephens' mother's house, and Stephens returned the bag to Charles. Charles gave Stephens $3,500 for his efforts.

Almost a month later, on March 13, 2013, a customer at a Fort Wayne credit union noticed two masked men in the woods nearby. The customer called the police, but the men fled the scene before officers arrived. A subsequent search of the woods turned up a black ski mask with hand-cut eye holes similar to the one that Schweitzer said the PNC robbers had worn. The mask contained Seals' DNA.

On March 20, 2013, a Fort Wayne police officer attempted to initiate a traffic stop of a black Infiniti, and a chase ensued at speeds "approaching a hundred miles an hour." The chase ended only when the Infiniti crashed into parked cars, at which point two of its occupants, including the driver, fled on foot. They were not apprehended. A third man, Nadier Armour, remained in the vehicle, but he refused to cooperate with law enforcement officials. Officers searched the car and found a handgun, a cell phone, a traffic citation that had been issued to Seals, and Seals' driver's license. They also discovered a second black ski mask, four boxes of ammunition—some of which matched the caliber of the gun recovered from the bank—and $1,231 in $1 and $10 bills.

Seals voluntarily met with the FBI on May 1, 2013. Seals initially denied any involvement with the PNC robbery, but

when confronted with the fact that his DNA was recovered from the ammunition inside the gun left behind at the bank, his story changed. Seals told agents that he had loaded the gun for his brother, but that his participation ended there.

A grand jury returned a three-count indictment[2] against Seals on May 22, 2013. Prior to trial, the government notified Seals and the court that it planned to introduce the mask recovered from the woods in order to show Seals' identity. The district court held an evidentiary hearing on the issue. Seals conceded that the mask itself was admissible, as would be a "simple description of when and where the mask was found." The district court ruled that the mask was admissible, and that the government could elicit testimony about "the fact that police responded to the area of the [credit union] to investigate suspicious behavior, and recovered a mask with the Defendant's DNA." Such testimony was "necessary," the court concluded, "to present a complete picture to the jury and this context is not so prejudicial, when weighed against the probative value, as to warrant its exclusion." But the court prohibited the government from introducing any testimony regarding "the details of the masked individuals' behavior prior to the arrival of the police" in order to "reduce the risk of unfair prejudice."

At trial, the government called Stephens, Schweibert, and numerous law-enforcement officials as witnesses. The DNA evidence from the ammunition recovered from the bank and

---

[2] Specifically, the indictment charged Seals with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) & (d); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and possessing a firearm while a felon, in violation of 18 U.S.C. § 922(g).

the ski mask recovered from the woods were also presented. Fort Wayne police officer Christine Armstead testified about the circumstances leading to the mask's discovery. She recalled responding to a "suspicious person's report" on the morning of March 20, 2013, specifically a report that "some individuals in the woods wearing masks" had been observed "crawling towards the bank … ." Armstead continued, recounting that "[w]hen [she] arrived, [she] went to the bank to speak with the tellers to get more information." The prosecutor cut off Armstead at this point, saying, "Let me stop you right there. I just want to cover the recovery of the evidence, okay?" The government also made the following reference to the mask as part of its closing argument:

> This is how we know who is under the mask. After the bank robbery, there were some circumstances—and the circumstances aren't particularly important—but there were some circumstances where some guys were out milling around in the woods suspiciously, and that's just how the officers get out there. So officers go out, Christine Armstead is the officer in particular who recovers the black mask that we held up or that I held up and we showed there at the trial. Saw what that thing was. It's the same kind of mask that's later found in the black Infiniti, and it's the same thing you see in the surveillance video.

Seals mounted an alibi defense, calling two witnesses who testified that Seals was at their house on the day of the robbery. Only one of the alibi witnesses could definitely say that Seals was at the house during the robbery—the other was asleep at the time—and her testimony was inconsistent

with Seals' own statement to the FBI. The jury convicted
Seals on all three counts.

Seals' crimes carried a base offense level of 20, and his
criminal history category is III. The court imposed multiple
sentencing enhancements, two of them related to the March
20, 2013 car chase: (1) a two-level enhancement for reckless
endangerment during flight, U.S.S.G. § 3C1.2, and (2) a four-
level enhancement for the use of a firearm (i.e., the handgun
recovered from the chase vehicle) "in connection with" an-
other felony (i.e., the car chase), *id.* § 2K2.1(b)(6)(B). Seals ar-
gued that there was insufficient evidence to prove that he
was in the black Infiniti during the chase, but the court disa-
greed, finding (1) that Seals occupied the passenger seat of
the Infiniti as it fled from the police and (2) that Seals fled
from the scene on foot after the Infiniti crashed. The court
based its conclusion on the fact that "there were numerous
items found in the car connecting the vehicle with [Seals]."
The court did not make any findings regarding Seals' partic-
ipation in the chase. In the end, the district court calculated
Seals' offense level as 34, yielding a Guideline range of 188 to
235 months in prison on Count One, 84 months on Count
Two, and 120 months on Count Three. The court imposed a
sentence of 188 months on Count One, 84 months on Count
Two to run consecutively to Count One, and 120 months on
Count Three, running concurrent to Count One, for a total of
272 months.

## II

Seals argues that a new trial is necessary due to the dis-
trict court's failure to "undertake any analysis of the proba-
tive value of [Officer Armstead's testimony regarding the
mask's discovery] or its prejudicial effect." Evidence of a de-

fendant's prior bad acts is inadmissible to show propensity to commit a crime. FED. R. EVID. 404(b)(1). Such evidence may be introduced only "when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc). This analysis requires the court to consider not just "whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose." *Id.* The probative value of other-act evidence must then be weighed against its potential prejudice. *Id.* at 857[3]; *see also* FED. R. EVID. 403 (authorizing district court to exclude "relevant evidence" if its probative value is "substantially out-weighed by a danger of … unfair prejudice"). Evidence is "unduly prejudicial" if it creates a risk that invites an irrational emotional response from the jury. *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012).

We review the district court's admission of evidence under Rule 404(b) for an abuse of discretion. *United States v. Richards*, 719 F.3d 746, 758 (7th Cir. 2013). Even when an abuse of discretion occurs, however, reversal follows only if admission of the evidence affected the defendant's "substantial rights." FED. R. CRIM. P. 52(a); *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011). In making that evaluation, we must "gauge what effect the error had or reasonably may be taken to have had upon the jury's decision." *Hicks*, 635

---

[3] Although this court decided *Gomez* after Seals' trial, other post-*Gomez* decisions have also applied the *Gomez* test in reviewing pre-*Gomez* cases. *See, e.g., United States v. Stacy*, 769 F.3d 969, 975–76 (7th Cir. 2014). In any event, the previous test in this circuit was functionally equivalent to the one identified in *Gomez. See, e.g., United States v. Miller*, 673 F.3d 688, 702 (7th Cir. 2012).

F.3d at 1069 (citing *United States v. Zapata*, 871 F.2d 616, 622 (7th Cir. 1989)).

Seals complains that Officer Armstead's reference to the "bank" and its "tellers" in her testimony about the discovery of the mask at the credit union should have been prohibited under *Gomez* because it had no purpose "other than to show that Christopher had a propensity to commit bank robberies." Assuming the district court erred at all, we conclude that no new trial is warranted.

Regarding Seals' conviction for being a felon in possession of a firearm, there can be no doubt that any error regarding 404(b) evidence was harmless. Seals himself had admitted to loading the gun for his brother, and his DNA was discovered on the ammunition inside the gun recovered from the crime scene. That alone is sufficient to sustain his conviction under 18 U.S.C. § 922(g)(1).

As to the two charges stemming from the robbery itself, Officer Armstead's brief testimony likely had little impact on the jury's determination, given the significant evidence against Seals: Three men robbed the PNC Bank at approximately 9:10 a.m. on February 14, 2013. Stephens identified Seals as one of three men in the car with Charles when Charles met Stephens just minutes after the robbery to hand off the spoils of the heist. Seals' DNA was inside the gun used at the robbery. And Seals' DNA was found inside a homemade ski mask like the ones used by the PNC robbers. Seals' alibi defense was also makeweight. The testimony of the only witness who claimed to have seen Seals at the time of the robbery conflicted with Seals' own statements to FBI agents. In short, because the record contained substantial evidence of Seals' guilt, Officer Armstead's brief testimony al-

most certainly had little, if any, impact on the jury's deliberations. *See United States v. Miller*, 688 F.3d 322, 330 (7th Cir. 2012) (finding that the "fleeting" admission of propensity evidence without conducting a Rule 403 analysis was harmless where "the unchallenged evidence introduced by the government clearly established [the defendant's] guilt beyond a reasonable doubt"); *cf. United States v. Byrd*, 208 F.3d 592, 594 (7th Cir. 2000) ("Exclusion of evidence which is the only or the primary evidence in support of a defense is deemed to have had a substantial effect on the jury."). We, therefore, affirm Seals' conviction.

## III

Seals also argues that the district court erred in applying a pair of sentencing enhancements stemming from the high-speed car chase that occurred on March 20, 2013: (1) a two-level enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2; and (2) a four-level enhancement for use of a firearm "in connection with" another felony under U.S.S.G. § 2K2.1(b)(6)(B). He asks this court to reverse the application of these enhancements and remand for resentencing. Seals claims that the district court erred by (1) applying both enhancements without making a finding that Seals participated in or encouraged the car chase and (2) applying § 2K2.1(b)(6)(B) in particular because he did not commit "another felony" and there was no firearm used or possessed "in connection with" the high-speed chase.

## A

Generally speaking, we review a district court's application of the Sentencing Guidelines de novo and any underlying factual findings for clear error. *See United States v. Turner*,

400 F.3d 491, 500 (7th Cir. 2005). More deference is due, however, where an appellant failed to properly raise a claim below either by waiver or forfeiture. Waiver occurs when a defendant "intentionally relinquishes or abandons a known right." *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001) (internal quotation marks omitted). Forfeiture, on the other hand, occurs when a party fails to raise an argument due to accident or neglect. *Id.* Waived issues cannot be reviewed, while forfeited ones are reviewed for plain error. *Id.* Under plain-error review, the defendant must show that (1) there was error, (2) it was plain rather than subject to reasonable dispute, (3) it affected his substantial rights, and (4) the court should exercise its discretion to correct the error because it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732-35 (1993); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847-49 (7th Cir. 2005).

The government contends that Seals affirmatively waived any sentencing-related arguments other than the sole objection he raised below:  that he was not in the car during the chase. We do not read the record so narrowly, however. Although Seals' objection to the enhancements at sentencing hinged on a single argument, he never actively disclaimed the positions he now raises. He therefore forfeited, but did not waive, the issues now before us. *See Jaimes-Jaimes*, 406 F.3d at 848 (7th Cir. 2005) ("[W]e do not read our cases as establishing an inflexible rule that every objection not raised at a sentencing hearing is waived. The touchstone of waiver is a knowing and intentional decision.")

**B**

Section 1B1.3 of the Guidelines limits the application of certain sentencing enhancements to "relevant conduct" (i.e., conduct related to the offense(s) of conviction). This section reads, in pertinent part, as follows:

> Unless otherwise specified, … cross references in Chapter Two [and] adjustments in Chapter Three, shall be determined on the basis of … all acts and omissions committed, aided, abetted … or willfully caused by the defendant [and] all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a).

This circuit has never explicitly reached the question of whether § 1B1.3(a) demands that either enhancement at issue here—U.S.S.G. §§ 2K2.1(b)(6)(B) and 3C1.2—be related to the offense of conviction. But the plain language of the Guidelines as well as decisions from numerous other circuits suggest that the answer is "yes."

On its face, § 2K2.1(b)(6)(B) appears to be an exception to the relatedness required by § 1B1.3(a), given that it applies where a defendant "used or possessed a firearm … in connection with *another* felony offense."  But the application notes to § 2K2.1(b)(6)(B) refer directly to § 1B1.3(a), making clear that the firearm in question must be "part of the same course of conduct or common scheme or plan" as the offense

of conviction. U.S.S.G. § 2K2.1 cmt. n. 14(E)(ii) (citing *id.* § 1B1.3(a)(2)).

The connection between §§ 1B1.3(a) and 3C1.2 is similarly undeniable. The circuits that have considered the issue agree that the enhancement applies only to conduct related to the offense of conviction. *See United States v. Porter*, 413 F. App'x 526, 531 (3d Cir. 2011) ("[F]or § 3C1.2 to apply, Porter's [reckless flight from law enforcement] must have occurred during the course of attempting to avoid detection or responsibility for [his offense of conviction].") (internal quotation marks omitted); *United States v. Dial*, 524 F.3d 783 (6th Cir. 2008) ("When applying § 3C1.2, the district court must find a nexus between the offense for which the defendant was convicted and the conduct that involved reckless endangerment during flight."); *United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005) (requiring that the government prove "that a sufficient nexus lie between the underlying offense and the reckless flight"); *see also United States v. Gray*, 512 F. App'x 803, 808 (10th Cir. 2013) (assuming, without deciding, that a nexus is required); *United States v. Duran*, 37 F.3d 557, 559-60 (9th Cir. 1994) (same), abrogated on other grounds by *Tapia v. United States*, 564 U.S. 319 (2011). We join our colleagues in concluding that U.S.S.G. § 1B1.3(a) limits the application of §§ 2K2.1(b)(6)(B) and 3C1.2 to conducted related to the offense of conviction.[4]

---

[4] The applicable standard is outlined in U.S.S.G. § 1B1.3 (and § 2K2.1 cmt. n. 14(E)(ii)). We see no need to adopt the five-part test developed by the Fifth Circuit in *Southerland*, 405 F.3d at 268, and later adopted by the Sixth Circuit in *Dial*, 524 F.3d at 787.

In this case, the district court made no findings that
would support the conclusion that the offenses of convic-
tion—all of which stem from the robbery on February 14,
2013[5]—were connected to the behavior underlying the two
enhancements applied here (i.e., the possession of a firearm
and the reckless flight).[6]  Application of the enhancements
without such a finding constitutes error.

The district court's application of §§ 2K2.1(b)(6)(B) and
3C1.2 is also plagued by another misstep: the court made no
factual findings regarding Seals' participation in the March
20 car chase. Under § 3C1.2, a defendant is responsible for
only his "own conduct and for conduct that the defendant
aided or abetted, counseled, commanded, induced, pro-
cured, or willfully caused." U.S.S.G. § 3C1.2 cmt. n.5. Alt-

---

[5] The government concedes that "the gun supporting [Seals' felon-
in-possession conviction] was the one used during the robbery" and not
the one discovered in the car following the March 20, 2013 chase.

[6] The government nevertheless argues that "a sufficient factual basis
exists" to affirm Seals' sentence. It points to "numerous links between
the robbery and car chase (including the presence at both of Charles, a
mask, a gun, .38-caliber ammunition, and robbery proceeds)." But the
government misreads the Guidelines on this issue. The examples in the
application notes to § 1B1.3 indicate that the facts listed by the govern-
ment do not, standing alone, support a finding that the bank robbery and
the car chase were part of a "common scheme or plan" or the "same
course of conduct." Rather, the drafters of the Guidelines intended for
these concepts to connect, for sentencing purposes, criminal activity that
otherwise might be considered separately, such as long-term conspira-
cies and "offenses … sufficiently connected … to each other as to war-
rant the conclusion that they are part of a single episode, spree, or ongo-
ing series of offenses." U.S.S.G. § 1B1.3 cmt. n. 5(B)(i)-(ii). In any event,
such findings are better left to the district court, and we leave those de-
terminations to be made in the first instance on remand.

hough this is a matter of first impression before this court, every circuit to consider the issue has concluded that, in the context of a car chase, "some form of direct or active participation … is necessary for" the enhancement to apply to a passenger.[7] *United States v. McCrimon*, 788 F.3d 75, 79 (2d Cir. 2015); *see also United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012) ("To apply this enhancement to a passenger based on the driver's reckless conduct, the district court must specifically find that the passenger 'was responsible for or brought about the driver's conduct in some way.'" (quoting *United States v. Young*, 33 F.3d 31, 32-33 (9th Cir. 1994))). The district court erred when it applied § 3C1.2 without making a finding that Seals either caused or otherwise aided and abetted in the chase.

This error affects the application of § 2K2.1(b)(6)(B), as well. That section, as discussed above, applies a four-level enhancement where a defendant "used or possessed any firearm … in connection with another felony offense." The court applied this enhancement to Seals based on the handgun discovered in the vehicle abandoned after the March 20, 2013 chase. The "other offense" was Seals' participation in the car chase, a felony under Indiana law. *See* Ind. Code

---

   [7] The district court specifically found that Seals was the passenger of the Infiniti and not the driver during the March 20 chase based on the following exchange between Seals and a police officer from Seals' May 1, 2013 interview:

   Officer:     You were with [Charles Seals] in the crash?

   Defendant: Yeah, cause that's my car, that's why.

   Officer:     You weren't driving.

   Defendant: I know.

§§ 35–44.1-3-1(a)(3) & 1(b)(1)(A). Yet, as discussed above, the district court failed to make any findings that support the notion that Seals was actively involved in the chase. As the government acknowledges, "[t]hat was error when Seals' liability under Indiana law required that he assisted or encouraged the chase." *See Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014); *Smith v. State*, 809 N.E.2d 938, 944 (Ind. Ct. App. 2004)).

## C

As the district court erred in applying these enhancements, only two questions remain:  (1) were the court's errors "plain"?; and (2) did its errors impact Seals' substantial rights?  As noted earlier, the issues before us related to § 3C1.2 and 2k2.1(b)(6)(B) present matters of first impression for the court. The government is quick to point out that we "rarely find plain error on a matter of first impression" since such matters are "unlikely to be that obvious" even when "other circuits … have addressed this issue." But the fact that this court "rarely" finds plain error in such instances does not mean that such a conclusion is never warranted. And the circumstances of this case justify deviating from the general rule.

First, the Guidelines themselves limit the application of these enhancements to situations where there is some connection between the defendant's actions and the offense of conviction.  *See* U.S.S.G. §§ 1B1.3(a); 2K2.1(b)(6)(B) cmt. n. 14(E)(ii). In addition, this court has warned, on multiple occasions, that "Section 1B1.3 reflects the fact that the Sentencing Guidelines implement a charge-offense system rather than a real-offense system." *United States v. Allredge*, 551 F.3d 645, 647 (7th Cir. 2008); *see also United States v. White*, 888

F.2d 490 (7th Cir. 1989); *United States v. Talbott*, 78 F.3d 1183 (7th Cir. 1996). These cases, decided long before Seals' sentencing, highlight the ways in which § 1B1.3 narrows the scope of behavior that is relevant under Chapters Two and Three of the Guidelines. That §§ 2K2.1(b)(6)(B) and 3C1.2 should only apply to conduct related to the offense of conviction was not subject to reasonable dispute at the time of Seals' sentencing. The court's error in applying the enhancements was plain.

The notion that § 3C1.2 applies only where the defendant participated in the flight is no more controversial. In fact, the Second Circuit, also in a case of first impression, held that a district court committed plain error when it applied § 3C1.2 without first finding that the defendant played some role in the flight from police. *United States v. McCrimon*, 788 F.3d 75 (2015). The Second Circuit noted that "[e]very other circuit to consider the issue has held that some form of direct or active participation … is necessary in order for § 3C1.2 to apply." 788 F.3d at 79 (internal quotation marks omitted). Thus, it concluded, "[g]iven the plain meaning of the provision's language and the widespread agreement among our sister circuits, the appropriate standard for applying Section 3C1.2 is not 'subject to reasonable dispute,' and the district court's error was clear." *Id.* (quoting *United States v. Marcus*, 500 U.S. 258, 262 (2010)). We agree with the Second Circuit's analysis. In this case, as in *McCrimon*, the district court committed plain error when it applied § 3C1.2 without any factual findings regarding Appellant's participation in the car chase.

The second question—whether the court's errors impacted Seals' substantial rights—requires little analysis. The government concedes that, if the district court erred, "that error

prejudiced Seals because it affected his sentence [and] this Court should remand for a full resentencing."

We note, however, that the district court's error may well have been harmless had the court not tied its sentencing decision so closely to the Guidelines. Post-*Booker*, district courts are free to move away from the details of the Guidelines and consider conduct, such as the car chase here, for the light it sheds on the defendant's incorrigibility and dangerousness. For instance, remand would not be necessary had the district judge stated that she would have imposed the same sentence with or without the enhancements, because she deemed the car chase significant regardless of its effect on the Guidelines calculation. In this vein, the district court may well impose a reasonable sentence equal in length to the original sentence by exercising its judgment under 18 U.S.C. § 3553(a).

**IV**

For the foregoing reasons, Seals' conviction is affirmed and his sentence is vacated and the case remanded for resentencing consistent with this opinion.